## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| SANDRA PORTER, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO: |
| | ) | |
| v. | ) | |
| | ) | |
| ROGERS BENEFIT GROUP, INC., | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

COMES NOW Plaintiff, Sandra Porter ("Plaintiff" or "Ms. Porter"), through undersigned counsel of record and hereby submits her Complaint against Defendant Rogers Benefit Group, Inc. ("Defendant" or "RBG"), on the following grounds:

## NATURE AND PURPOSE

1.

This is a lawsuit brought due to violations of Title I of the Americans with Disabilities Act, as amended by the ADA Amendments Act of 2008 ("ADA"), 42 U.S.C. § 12101 et seq.; ADA retaliation; and gender discrimination pursuant to Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e et seq.

2.

Ms. Porter brings this action because, despite her good performance history, Rogers Benefit Group terminated her employment because: (1) Ms. Porter had an actual impairment, a record of actual impairment, or RBG regarded her as having an impairment; (2) she has an impairment that actually and substantially limits her in one or more major life activities for which she requested a reasonable accommodation – time to adjust to her medication and a flexible work schedule, among others; Ms. Porter also brings a claim for retaliation in violation of the ADA based on the protected conduct of requesting an accommodation under the ADA and subsequent termination. In addition, Ms. Porter brings this action because a similarly situated male colleague was treated more favorable than she in the terms and conditions of employment in violation of Title VII.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

3.

Ms. Porter timely filed a Charge of Discrimination against Defendant Rogers Benefit Group, Inc. with the Equal Employment Opportunity Commission ("EEOC") on January 5, 2018 and received a "Notice of Right to Sue" from the EEOC on June 25, 2020. The EEOC issued a "for cause" finding for Plaintiff's ADA discrimination and retaliation claims. This action is filed within ninety (90) days of

the Plaintiff's receipt of the "Notice of Right to Sue." Thus, administrative remedies have been exhausted.

## JURISDICTION AND VENUE

4.

Jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 12101 et seq., and 28 U.S.C. §§ 1331 and 1337.

5.

This Court is an appropriate venue for Plaintiff's claims because all of the parties reside within the Northern District of Georgia, and all or a substantial majority of the events giving rise to Plaintiff's claims occurred in this judicial district.

## PARTIES

6.

Plaintiff Sandra Porter is a resident of the State of Georgia and is entitled to bring actions of this type and nature.

7.

Ms. Porter is and, at all times relevant hereto, was an individual with a disability as that term is defined by 42 U.S.C. § 12102(1).

8.

Ms. Porter is a person with a disability because she has actual physical impairments causing substantial limitations in one or more major life activities, because she has a record of impairment, and because Defendant regarded her as having an impairment.

9.

Ms. Porter was capable of performing the essential functions of her job with or without reasonable accommodation.

10.

Rogers Benefit Group is an employer engaged in commerce or in an industry affecting commerce within the meaning of the ADA and Title VII, and has employed more than 15 persons for each working day in each of 20 calendar weeks in the current or preceding calendar year.

11.

RBG is a foreign corporation with an Atlanta, Georgia office located in DeKalb County, Georgia and is subject to the jurisdiction of the Court.

12.

RBG can be served via its Registered Agent, CT Corporation System, 289 S Culver St., Lawrenceville, GA 30046.

## FACTUAL ALLEGATIONS

### 13.

Ms. Porter began working with Rogers Benefit Group in the Atlanta in July 2010 as a Customer Service Representative. In March 2012, she was promoted to a Special Sales Representative. Her direct supervisor and manager of the Atlanta, Georgia office was Peter Hopkinson.

### 14.

Ms. Porter never received a written job description for her the two positions she held while employed with RBG, thus, RBG did not have a written guideline for the essential job duties of the Special Sales Representative position.

### 15.

Based on Ms. Porter's performance of the job of the Special Sales Representative, the following were essential duties of the position: building relationships with new agents hired into the company; training the agents; helping agents to present plans to prospective employer groups for purchase of small group health insurance plans; and handling of renewals for the following year.

### 16.

Ms. Porter mainly worked from home. However, there was an office she could utilize when needed in order to attend company meetings or to meet with clients.

17.

RBG did not have an employment handbook or any written policies during Ms. Porter's employment.

18.

Ms. Porter never received any written performance reviews or appraisals during her employment at RBG.

19.

Ms. Porter did not receive any form of discipline while employed with RBG.

20.

On May 1, 2017, Ms. Porter was diagnosed with Thyroid Cancer. Thyroid Cancer is an ADA-covered disability that substantially limits major life activities, such as working, among others.

21.

The Thyroid regulates one's metabolism. Symptoms Ms. Porter experienced pertaining to Thyroid Cancer included fatigue, feeling sluggish, weight gain, trouble concentrating.

22.

On May 24, 2017, Ms. Porter had surgery to remove her Thyroid. As a result, she had to start taking medication to help regulate her metabolism. Ms. Porter will

have to take medication to help regulate her metabolism for the rest of her life.

23.

After Ms. Porter's surgery, her medical restrictions included no lifting of anything over ten (10) pounds; to ger plenty of rest; no exercise; and no driving.

24.

On July 5, 2017, Ms. Porter also had upper GI surgery.

25.

In order to begin radiation treatments for Thyroid Cancer, she had to receive shots on July 12, 2017 and July 13, 2017. In addition, she was forced to quarantine for a week from July 14, 2017 to July 20, 2017.

26.

Ms. Porter used seven days of vacation for the week in quarantine.

27.

As a result of the radiation treatments, she missed group meetings held on July 12 and July 13. Mr. Hopkinson approved her absence from the meetings.

28.

During the group meetings, Mr. Hopkinson discussed Ms. Porter's medical condition and told her coworkers and other insurance agents outside of RBG about her having cancer and undergoing radiation treatments.

29.

The Thyroid medication Ms. Porter began taking after her surgery had to be adjusted in six (6) week intervals to make sure the dosage prescribed is doing its intended job of regulating the Thyroid.

30.

Ms. Porter needed reasonable accommodations in order to adjust to her medication. The side effects of adjusting to her medication included but was not limited to, extreme fatigue; insomnia; nausea; headaches; cramping; depression; and irritability.

31.

Ms. Porter requested ADA reasonable accommodations of a modified work schedule so that she could return phone calls and emails later in the day as opposed to early in the morning; ability to rest as needed; ability to attend doctor's appointments; and assistance from Hopkinson and coworkers.

32.

Mr. Hopkinson told Ms. Porter to put his name and number on her voicemail if any agent or customer needed immediate assistance and she was not available.

33.

On October 19, 2017, Ms. Porter emailed Mr. Hopkinson informing him that

she still needed reasonable accommodations in order to adjust to her medications. Ms. Porter told Hopkinson that her doctor had adjusted her medication again to help her, and that she should feel better within a month.

34.

In addition, Ms. Porter told Hopkinson that her medication had affected her stamina, and to "be patient" with her as she goes through this process.

35.

In response, Mr. Hopkinson told Ms. Porter that he wanted to set up a meeting with her for October 23, 2017.

36.

During the meeting on October 23, 2017, Mr. Hopkinson told Ms. Porter that she was "disabled." He told Ms. Porter that she was no longer a "good long-term fit" for the company. He told Ms. Porter to start looking for another job. He told Ms. Porter that her doctor didn't know what he was talking about in the treatment of her illness.

37.

After the October 23 meeting, Mr. Hopkinson emailed her a potential job listing and refused to accommodate Ms. Porter any longer.

38.

A few days later, Mr. Hopkinson locked Ms. Porter out of her computer, which prevented her access to company files and emails.

39.

On October 30, 2017, Mr. Hopkinson yelled at Ms. Porter for not responding to an email. Mr. Hopkinson denied he knew she didn't have access to company files and company email.

40.

Mr. Hokinson then yelled at Ms. Porter that he was "sick and tired of her excuses" and yelled at her because other agents had to help fill in for her while she's been recovering and they should not have to do that.

41.

Hopkinson fired Ms. Porter on October 31, 2017.

42.

A male sales representative in the same position as Ms. Porter was treated more favorably than Ms. Porter when he needed leave for multiple back surgeries.

43.

RBG coworkers were required to assist this male coworker in the performance of his job duties while he was recovering. He was not told that the accommodation

was an issue for RBG and was not told that other coworkers should not have to cover his job duties.

44.

The male coworker was not fired when he returned from medical leave and requested accommodations from RBG. Upon information and belief, he is still employed with RBG.

45.

On January 5, 2018, Ms. Porter filed an EEOC Charge alleging violations of the ADA and Title VII.

46.

In discriminating and retaliating against Ms. Porter, RBG acted willfully, wantonly, and intentionally to harm Ms. Porter and her federally protected rights.

47.

Additionally, and in the alternative, RBG acted with reckless disregard for Ms. Porter's federally protected rights.

48.

The effect of Defendant's above-stated actions has been to deprive Ms. Porter of employment opportunities, income in the form of wages, prospective employment benefits, including social security and other benefits to which she would have been

entitled but for Defendant's illegal actions.

49.

The effect of Defendant's above-stated actions has also caused Ms. Porter to suffer out-of-pocket losses and mental and emotional distress for which she seeks redress.

## SUBSTANTIVE ALLEGATIONS

## COUNT ONE
## Violation of the ADA- Regarded as Disabled

50.

At all times relevant hereto, Rogers Benefit Group has been subject to the requirements of Title I of the Americans with Disabilities Act as amended by the ADA.

51.

At all times relevant hereto, Ms. Porter was an individual with a disability as defined under the ADA, 42 U.S.C. § 12102(1)(C) because RBG regarded her as a person with an impairment as defined by the Act.

52.

Moreover, at all times relevant hereto, Ms. Porter has been a qualified individual with a disability as that term is defined by 42 U.S.C. § 12111(8) and able to perform the essential functions of the job.

53.

RBG terminated Ms. Porter because it regarded her as disabled and not able to perform the essential functions of her job.

54.

Defendant's actions violated Section 102 of the ADA, 42 U.S.C. § 12112, which prohibits discrimination based on disability.

55.

As a direct and proximate result of Defendant's intentional discrimination, Ms. Porter has suffered out-of-pocket losses and has been deprived of job-related economic benefits, including income in the form of wages and other job-related benefits, including social security, all in an amount to be established at trial.

56.

RBG's actions have caused and continue to cause Ms. Porter to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

## COUNT TWO
## Actual Discrimination and Failure to Accommodate in Violation of the ADA

57.

At all times relevant hereto, RBG has been subject to the requirements of Title I of the Americans with Disabilities Act as amended by the ADA.

58.

At all times relevant hereto, Ms. Porter was an individual with a disability as defined by the ADA, 42 U.S.C. § 12102(1)(A).

59.

RBG was aware of Ms. Porter's disability and record of disability.

60.

At all times relevant hereto, Ms. Porter has been a qualified individual with a disability as that term is defined by 42 U.S.C. § 12111(8) and able to perform the essential functions of her job with or without accommodations.

61.

Ms. Porter's disability substantially limited one or more major life activities.

62.

Ms. Porter requested reasonable accommodations from RBG relating to her disability.

63.

RBG refused to grant Ms. Porter's requested accommodations and fired her.

64.

Defendant's actions amount to a violation of Section 102 of the ADA, 42 U.S.C. § 12112, which prohibits discrimination based on disability and requires

reasonable accommodation for disabilities.

65.

As a direct and proximate result of Defendant's intentional discrimination, Ms. Porter has suffered out-of-pocket losses and has been deprived of job-related economic benefits, including income in the form of wages and other job-related benefits, including social security, all in an amount to be established at trial.

66.

Defendant's actions have caused, continue to cause, and will cause Ms. Porter to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

## COUNT THREE
## Improper Disclosure of Medical Information-ADA

67.

At all relevant times hereto, Rogers Benefit Group has been subject to the requirements of Title I of the ADA.

68.

Under the ADA, 42 U.S.C. § 12112(d)(3), an employer is to treat any medical information obtained from a disability-related inquiry or medical examination, as well as any medical information voluntarily disclosed by an employee as a

confidential medical record.

69.

Defendant violated the ADA by disclosing Ms. Porter's private medical information to her coworkers and outside insurance agents in July 2017.

70.

The requirement under the ADA is enforced regardless of whether or not Ms. Porter is rendered a "qualified" individual as defined by the ADA.

71.

As a direct and proximate result of Defendant's intentional discrimination, Ms. Porter has suffered out of pocket losses and has been deprived of job-related economic benefits, including income in the form of wages and other job related benefits, including social security, all in an amount to be established at trial.

72.

Defendant's actions have caused, continue to cause, and will cause Ms. Porter to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

**COUNT FOUR**
**Retaliation in Violation of the ADA**

73.

At all times relevant hereto, Rogers Benefit Group has been subject to the

requirements of Title I of the ADA.

74.

At all times relevant hereto, Ms. Porter was an individual with a disability as defined by the ADA, 42 U.S.C. § 12102(1)(A).

75.

From May 1, 2017 to October 31, 2017, Ms. Porter engaged in protected activity under the ADA when she requested accommodations for her disability, *including but not limited to*, medical leave; flexible work schedule; ability to attend medical appointments; ability to telecommute; assistance with her workload; and time to adjust to her medications.

76.

In October 2017, after informing RBG of her continued need for reasonable accommodations to adjust to her medications, she was terminated.

77.

Defendant's actions in retaliating against Ms. Porter following her requests for reasonable accommodation were committed with reckless disregard for her right to be free from discriminatory treatment because of her opposition to discriminatory practices in violation of the ADA.

78.

The actions taken against Ms. Porter by Defendant have caused her to suffer both monetary and non-monetary damages.

79.

Accordingly, Ms. Porter is entitled to the equitable and monetary relief set forth in the following prayer for relief for Defendant's violation of her rights under the ADA.

## COUNT FIVE
## Gender Discrimination in Violation of Title VII

80.

Defendant treated similarly situated males more favorable than Ms. Porter, *including but not limited to* accommodating a male colleague and not terminating his employment for needing accommodations to recover from a surgery; and giving male colleagues more favorable sales accounts. This was done at least in part because of Plaintiff's gender; and constitutes a violation of 42 U.S.C. § 2000e.

81.

Overall, Defendant treated male employees more favorably than Plaintiff and other females employed by Defendant after requesting medical leave and accommodations.  Such actions are a violation of Title VII.

82.

As a result of being denied a reasonable accommodation based on her gender and losing her employment, Plaintiff suffered emotional distress, and financial losses, including a loss of her pay and benefits of employment.

83.

As Defendant's conduct was willful and deliberate, Plaintiff is entitled to all relief afforded under the statute, including the award of punitive damages against Defendant in an amount to be determined by the enlightened conscience of the jury.

**WHEREFORE**, Plaintiff demands judgment as follows:

(a)    That this Court declare that Defendant's actions, policies and practices complained of herein violate the rights of Plaintiff as secured by state and federal law;

(b)    Award Plaintiff nominal damages;

(c)    Back and front pay for willful and intentional violations of the ADA and Title VII;

(d)    Reasonable attorneys' fees, costs and expenses of litigation;

(e)    Injunctive relief and prohibition of Defendant from engaging in further unlawful conduct of the type described herein;

(f)    Order Defendant to compensate Ms. Porter for mental and emotional

damages suffered because of Defendant's unlawful and discriminatory conduct;

(g)     Grant to Ms. Porter punitive damages for Defendant's willful and intentional violations of the ADA and Title VII;

(h)     Trial by jury as to all issues;

(i)      Prejudgment interest at the rate allowed by law; and

(j)      All other relief as the Court deems just and proper.


Respectfully submitted, this 23rd day of September 2020.


/s/ Meredith J. Carter
Meredith J. Carter
Georgia Bar No. 325422


M. CARTER LAW LLC
2690 Cobb Parkway
Suite A5-294
Smyrna, Georgia 30080
T: (404) 618-3838
meredith@mcarterlaw.com